UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

----------------------------------------------------------------X

LAVELLE TODD,

               Petitioner,

        -against-

**MEMORANDUM AND ORDER**
14-CV-5830 (JMA)

MARK BRADT, SUPERINTENDANT

             Respondent.

----------------------------------------------------------------X

**APPEARANCES:**

**FILED**
**CLERK**

1/17/2018 5:00 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

Lavelle Todd
       _Pro se_ Petitioner

Thomas C. Costello, Assistant District Attorney
District Attorney of Suffolk County
200 Center Drive
Riverhead, NY 11901
       _Attorney for Respondent_

**AZRACK, United States District Judge:**

      In December 2010, following a jury trial in state court, Lavelle Todd was convicted of one count of Manslaughter in the First Degree and three counts of Assault in the First Degree. In February 2011, Todd was sentenced to twenty-two years of imprisonment with five years of post-release supervision on the Manslaughter count and to seventeen years of imprisonment with five years of post-release supervision on the remaining counts, with both sentences to run concurrently.

      Todd, proceeding pro se, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising a number of separate grounds. For the following reasons, all of Todd's proffered grounds are either procedurally barred or without merit. Thus, the petition is DENIED in its entirety.

# I. BACKGROUND

The following facts are taken from the petition and the underlying record.[1]

## A. Factual Background

On May 26, 2008, Todd attended "Central Islip Day" at the Central Islip Recreational Center.  (Tr. 1647.)  Todd went to the event with his friends Lloyd Anderson, Cloyd Anderson, and James Anderson; all known members of "Teamwork," a gang affiliated with the "Bloods".  (Tr. 1646-48.)  Shortly after Todd's group arrived at "Central Islip Day," Luis Perez arrived at the event.  (Tr. 731-32.)  Luis Perez attended the event with Robert Adams, Robert Simmons, Ricardo Reid, Bradley Mitchell, and Andrew Phillips; all known members of "G Dubs", a rival gang to "Teamwork" and known to wear the color green.  (Tr. 730-32.)

Following the arrival of the members of "G Dubs," an argument broke out between Todd and Luis Perez.  (Tr. 740-42, 1657-58.)  During this dispute, Luis Perez was standing beside Robert Adams and Robert Simmons.  (Tr. 739-42, 1327.)  This argument escalated to violence; Todd removed a loaded firearm from his waistband and fired multiple shots in the direction of the aforementioned members of "G Dubs", striking Luis Perez, Richard Owens, and Robert Adams.  (Tr. 1327; 1660; 1693-94.)  Todd then fled the scene.  (Tr. 1660-61.)

Luis Perez did not immediately realize he was shot and, upon hearing the gunshots, ran from the location; eventually collapsing to the ground.  (Tr. 741-43.)  Suffolk County Police Officers located Luis Perez and observed him to have a gunshot wound near his pubic area; Luis Perez was transported to a local hospital for medical treatment.  (Tr. 743-44.)  Luis Perez suffered substantial injuries as a result of the shooting, including a bullet striking his bladder and rectum,

---

[1]  "Tr." refers to the trial transcript, People v. Todd Trial Tr., Nov. 12, 15-19, 22, 29-30, 2010; Dec. 1, 6-9, 2010, ECF Nos. 10-3 and 10-4. "S." refers to the transcript for the sentencing proceedings, People v. Todd S. Tr., Feb. 14, 2011, ECF No. 10-5.  "Hr'g." refers to the hearing transcript, People v. Todd Hr'g. Tr., June 23, 25, 2009, Nov. 3, 2010, ECF No. 10-1.

causing him to wear a colostomy bag for approximately sixteen months. (Tr. 744.) Upon hearing the gunshots, Richard Owens also tried to flee the scene, but was shot in the back and received treatment at a local hospital for said gunshot wound. (Tr. 1260-62.) Robert Adams was unable to flee the scene; he was shot in the torso and died as a result of the gunshot wound. (Tr. 874.)

After the shooting, Todd fled to North Carolina, where he was later apprehended. (Tr. 901-04.) Following his apprehension, Todd made a post-Mirandized statement during which he admitted, in pertinent part, to being present at Central Islip Day, shooting Luis Perez, and proceeding to fire several more shots before running from the location. (Tr. 909-32.) Todd then proceeded to make a written statement of similar substance. (Id.)

Todd was tried in New York Supreme Court, Suffolk County on November 12, 2010. (Tr. 575.) At trial, the prosecution presented the testimony of victims Luis Perez and Richard Owens, other civilian eyewitnesses, expert witnesses, and police officers who played a role in the investigation of this matter. (Tr. 589-1615.) Todd testified on his own behalf, but did not put on any additional defense witnesses. (Tr. 1640-1836.)

During his testimony, Todd denied being an active member of the gang "Teamwork" at the time of the shooting. (Tr. 1701-02). Todd stated that during an argument with Luis Perez on Central Islip Day, Todd observed Luis Perez gripping an object under his shirt. (Tr. 1656-59). Todd indicated that Perez approached him during the argument and pulled out what appeared to be a semi-automatic firearm. (Tr. 1659-60.) Todd stated that as a result he acted to defend himself and "just started firing trying to get out of there basically." (Tr. 1660.) Todd emphasized that he did not intend to kill or injure Luis Perez, Richard Owens or Robert Adams. (Tr. 1678.) When asked on cross-examination about the inculpatory statements he made to Detectives, Todd stated

that the Detective wrote the statement and that he had not read over its contents before signing it. (Tr. 1807-08.)

On December 9, 2010, Todd was convicted of Manslaughter in the First Degree, pursuant to New York Penal Law Section 125.20(1), and three counts of Assault in the First Degree, pursuant to New York Penal Law Section 120.10(1). (Tr. 2076-77.) Todd was acquitted of Murder in the Second Degree and Attempted Murder in the Second Degree, pursuant to New York Penal Law Section 125.25. (Tr. 2076-77.)

On February 14, 2011, Todd was sentenced to twenty-two years of incarceration for the manslaughter count and seventeen years for each of the assault counts, with all terms to run concurrently. (S. 26.)

Two events during the trial are notable for purposes of this petition. First, during the cross-examination of Todd, the prosecution asked, "Do you know it was Michael Hagood who turned you into the police?" (Tr. 1776.) Michael Hagood, Todd's foster brother, did not testify at trial and was not subject to cross-examination. Defense counsel objected to this question and the trial court did not permit a response. (Tr. 1776-80.) Following argument, the trial court delivered the following curative instruction to the jury:

> I want to again advise you as I did in my preliminary instructions to you that a question by itself is not evidence. It's the question with the answer that is evidence. For example, sometimes a question will assume something to be true. You are not, however, to conclude that assumption the question is true unless in your judgment the answer confirmed that is it's true. You must consider the question with the witness's answer in deciding whether you find the answer believable and accurate. The question with the answer. Now, when a question is sustained and there is no answer there is no evidence so you're not to consider just a question by itself . . . When an objection is made to a question before the witness answers that if overrule the objection the witness is permitted to answer. If I sustain the objection there is no answer and therefore no evidence. Remember, a question alone is not evidence.

4

(Tr. 1805-06.)

Second, during the prosecutor's summation, he discussed the testimony of civilian eyewitness Taniah Morrow. (Tr. 1901-03.) The prosecution stated, "Taniah Morrow showed courage. She showed courage to come in here, stand up, be strong, face him knowing him, knowing his friends, knowing what she had to go back to in the Central Islip community." (Tr. 1903.) Defense counsel did not object to these comments during the summation.

**B. Post-Conviction Proceedings**

**1. The Direct Appeal**

On October 12, 2012, Todd appealed his conviction to the Second Department of the New York Appellate Division. On appeal, he argued: (1) that the Assistant District Attorney committed prosecutorial misconduct during summation and the cross-examination of Todd; (2) that the prosecution failed to meet its burden of proof beyond a reasonable doubt and the resulting conviction was against the weight of the evidence; and (3) that the imposed sentence was harsh and excessive. (See Def.'s App. Br., Oct. 12, 2012 ("App. Div. Br."), at 20-37, ECF No. 10.)[2]

The Second Department affirmed Todd's conviction on July 17, 2013. People v. Todd, 108 A.D.3d 684, 684-85 (N.Y. App. Div. 2d Dep't 2013). The court determined that there was sufficient evidence presented to the jury to uphold Todd's conviction and that the ultimate sentence was not excessive. Id. With regard to the alleged prosecutorial misconduct, the court addressed the prosecutor's contested cross-examination question and found that it was improper, but found the court's curative instruction "ensured that the prosecutor's improper question did not deprive defendant of a fair trial." Id. at 685. The court then addressed the comment made during the prosecutor's summation and found that Todd's "contentions regarding the prosecutor's conduct

---

[2] The Court uses the pagination assigned by the electronic case filing system for ECF No. 10.

on summation are unpreserved for appellate review inasmuch as he did not object to the comments he now claims were improper.  In any event, those comments were either fair response to defense counsel's summation, fair comment on the evidence, or permissible rhetoric."  Id. (internal citations omitted).

On September 30, 2013, the New York Court of Appeals denied Todd's request for leave to appeal.  People v. Todd, 21 N.Y.3d 1077 (N.Y. 2013).

**2. The Section 440.10 Motions**

Todd filed a pro se motion under Section 440.10 of the New York Criminal Procedure Law.  (See Def.'s 440.10 Mot., July 21, 2014, at 81-92, ECF No. 10.)  In the 440.10 Motion, Todd again argued that the Assistant District Attorney committed prosecutorial misconduct during summation and cross-examination of Todd.  He also argued that his trial counsel was ineffective for failing to object to the prosecutor's improper comments during summation.  Id.  On September 17, 2014, Todd filed a second 440.10 Motion, arguing that the prosecution's comments during Todd's cross-examination implicated the Confrontation Clause.  (See Def.'s Second 440.10 Mot., Sept. 17, 2014, at 113-120, ECF No. 10.)

The Supreme Court of Suffolk County denied Todd's 440.10 Motions as procedurally barred, stating "[a] review of the briefs on appeal shows that the issues defined by defendant are a verbatim match of the issues previously raised by his appellate counsel . . . [d]efendant is thus precluded from raising these issues in a CPL 440 motion."  (Court Order Denying Def.'s 440.10 Mot., Jan. 13, 2015, at 2, ECF No. 15-1.)  Additionally, the Supreme Court of Suffolk County concluded that "[w]ith respect to all of the arguments raised by defendant, the Court determines that there are no circumstances under CPL § 440.10 requiring a vacation of judgment.  Id.  It appears that Todd never appealed the denial of the 440.10 Motions to the Appellate Division.  See

Nov. 16, 2017 Ltr. from Thomas Costello to the Court, ECF No. 15 (stating "[t]here were no further filings in connection with this motion").

### 3. The Instant Petition

Todd filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on September 23, 2014. He asserts the following grounds for relief:

(1) that the prosecution committed prosecutorial misconduct during summation and the cross-examination of Todd (the "prosecutorial misconduct" claims);

(2) that the prosecution failed to meet their burden of proof beyond a reasonable doubt at trial, and the resulting conviction is against the weight of the evidence (the "weight of the evidence" claim);

(3) that the prosecutor's reference to statements made by a witness who did not testify at trial violated the Confrontation Clause (the "Confrontation Clause" claim); and

(4) that trial counsel provided ineffective assistance of counsel for failing to object to the prosecution's errors and failing to preserve issues for appeal (the "ineffective assistance of counsel" claim).

(See Pet. at 1-14, ECF No. 1.)

For the reasons discussed below, all of Todd's claims are either procedurally barred or without merit. Thus, the instant petition is DENIED in its entirety.

## II. DISCUSSION

### A. Standards of Review

### 1. Overview of AEDPA

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), to restrict "the power of federal courts to grant writs of habeas corpus to state prisoners." Williams v. Taylor, 529 U.S. 362, 399 (2000) (O'Connor, J., concurring). Under AEDPA, a prisoner may file a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To make that showing, the petitioner must demonstrate: (1) the exhaustion of state

remedies, (2) the absence of a procedural bar, and (3) the satisfaction of AEDPA's deferential review of state court decisions.  See id. § 2254.

### 2. Exhaustion

A court cannot review a habeas petition unless the petitioner "has exhausted the remedies available" in state courts.  28 U.S.C. § 2254(b)(1)(A).  This requirement first allows state courts the "'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" Jackson v. Edwards, 404 F.3d 612, 619 (2d Cir. 2005) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).  Thus, a petitioner must show that he fairly presented his federal claim to the highest state court from which a decision can be rendered.  Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 190 n.3 (2d Cir. 1982) (en banc).  Although the petitioner need not "'cite chapter and verse of the Constitution in order to satisfy this requirement,' he must tender his claim 'in terms that are likely to alert the state courts to the claim's federal nature.'"  Jackson v. Conway, 763 F.3d 115, 133 (2d Cir. 2014) (quoting Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011)).

Here, petitioner raises both exhausted and unexhausted claims, creating a "mixed petition" that the Court may deny in its entirety on the merits.  See McCrae v. Artus, No. 10-CV-2988, 2012 WL 3800840, at *8 (E.D.N.Y. Sept. 2, 2012).  "Federal courts retain the discretion to deny a petition including unexhausted claims on the merits when it deems those claims to be patently frivolous."  Ortiz v. Marshall, No. 08-CV-8815, 2009 WL 3170300, at *7 (S.D.N.Y. Sept. 30, 2009) (internal quotation marks omitted).

### 3. Procedural Default

A federal court cannot review a habeas petition "when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'"  Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman v. Thompson, 501 U.S.

722, 729 (1991)).  For this reason, under the doctrine of procedural default, a federal court will not

review "the merits of claims, including constitutional claims, that a state court declined to hear

because the petitioner failed to abide by a state procedural rule."  Martinez v. Ryan, 566 U.S. 1, 9

(2012).  This procedural bar applies even if the state court addressed a claim's merits in the

alternative, but also decided that claim on independent procedural grounds.  Velasquez v.

Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam); see also Harris v. Reed, 489 U.S. 255, 264

n.10 (1989) (observing that "a state court need not fear reaching the merits of a federal claim in an

alternative holding" where the court explicitly invokes a procedural rule as an independent ground

for its decision) (emphasis in original).

　　　"The concepts of procedural bar and exhaustion often interact in an important way."

Dominguez v. Rock, No. 12-CV-3269, 2016 WL 542120, at *5 (E.D.N.Y. Feb. 9, 2016).  "If a §

2254 petitioner has failed to present a claim to a state court but can no longer do so – for example,

if the time to file a state-court appeal has passed – then that claim is considered procedurally barred

rather than unexhausted."  Id. (citing O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999)); Lloyd v.

Walker, 771 F. Supp. 570, 574 (E.D.N.Y. 1991) (noting that "[w]hen a petitioner has not properly

presented his claim to a state for consideration on the merits, but it is clear that the state court

would hold the claim procedurally barred, . . . the exhaustion requirement is satisfied," but,

nonetheless, the petitioner is barred from litigating the merits of that claim in federal habeas

proceedings) (internal quotation marks and citation omitted).

　　　To overcome a procedural bar a petitioner must show either (1) "cause for the default and

actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider

the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750.  To

demonstrate cause, a petitioner must put forth that "some objective factor external to the defense

impeded counsel's efforts to comply with the State's procedural rule": for example, that the factual or legal basis for a claim was not reasonably available to counsel or that "some interference by officials … made compliance impracticable." Murray v. Carrier, 477 U.S. 478, 488 (1986) (internal quotation marks and citations omitted). A petitioner may also satisfy the cause requirement by demonstrating that his attorney's failure to comply with state procedural rules denied him constitutionally adequate representation. See Tavarez v. Larkin, 814 F.3d 644, 650 (2d Cir. 2016). Generally, however, a petitioner cannot invoke this ground unless he first asserted the same independent Sixth Amendment ineffective assistance claim in state court and exhausted his state-court remedies with respect to that claim. See, e.g., Edwards v. Carpenter, 529 U.S. 466, 451-52 (2000).

To satisfy the prejudice requirement, the petitioner must demonstrate that counsel's errors (or any other basis invoked by the petitioner to establish cause) not only "created a possibility of prejudice, but that they worked to his actual and substantial disadvantage". United States v. Frady, 456 U.S. 152, 170 (1982).

Even if a petitioner cannot establish cause and prejudice, a federal court may excuse a petitioner's procedural default if he can show that a fundamental miscarriage of justice would result. A petitioner can overcome a procedural bar by showing "that he is actually innocent of the crime for which he has been convicted." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citing Schlup v. Delo, 513 U.S. 298, 321 (1995)). To prevail, the petitioner must put forth "new reliable evidence . . . that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup, 513 U.S. at 324.

**4. AEDPA Standard of Review**

If a state court reached the merits of a claim, a federal court may not grant a writ of habeas

corpus unless the state court's adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has construed AEDPA "to give independent meaning to

'contrary [to]' and 'unreasonable.'" Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000).

A state court's decision is "contrary to" clearly established federal law if "the state court

arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if

the state court decides a case differently than [the Supreme Court] has on a set of materially

indistinguishable facts." Williams, 529 U.S. at 412-13. A decision involves "an unreasonable

application" of clearly established federal law when a state court "identifies the correct governing

legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the

facts of the prisoner's case." Id. at 413. This standard does not require that all reasonable jurists

agree that the state court was wrong. Id. at 409–10. Rather, the standard "falls somewhere between

'merely erroneous and unreasonable to all reasonable jurists.'" Jones, 229 F.3d at 119 (quoting

Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

AEDPA "'imposes a highly deferential standard for evaluating state-court rulings and

demands that state-court decisions be given the benefit of the doubt.'" Jones v. Murphy, 694

F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 132 S. Ct. 490, 491 (2011) (per curiam)).

This standard is "'difficult to meet.'" White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (quoting

Metrish v. Lancaster, 133 S. Ct. 1781, 1786 (2013)), reh'g denied, 134 S. Ct. 2835 (2014). A

petitioner must show that the "state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

Furthermore, a state court's determinations of factual issues are "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006). A state court's findings of fact will be upheld "unless objectively unreasonable in light of the evidence presented in the state court proceeding." Lynn, 443 F.3d at 246–47 (quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)). Thus, a federal court may overrule a state court's judgment only if "after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Williams, 529 U.S. at 389.

### 5. Pro Se Status

A petitioner "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997). However, in light of Todd's pro se status, the Court construes his submissions liberally and interprets them "'to raise the strongest arguments that they suggest.'" Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). This liberal interpretation of the petition "does not exempt a party from compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)).

## B. Claims for Relief

As stated above, Todd seeks habeas relief on four separate grounds: (1) that the prosecution committed prosecutorial misconduct during summation and during the cross-examination of Todd;

(2) that the prosecution failed to meet its burden of proof at trial and his conviction is against the weight of the evidence; (3) that the prosecution made comments during the cross-examination of Todd that violated the Confrontation Clause; and (4) that Todd was denied effective assistance of counsel due to various errors committed by trial counsel.  As is discussed below, several of Todd's claims are procedurally barred from review.  Additionally, all of Todd's claims fail on the merits.  Thus, the petition is DENIED in its entirety.

**1. Prosecutorial Misconduct Claim**

Todd argues that the Assistant District Attorney committed prosecutorial misconduct through the comments made during summation and a question asked during the cross-examination of Todd.  The Court addresses the two grounds in turn.

With regard to the alleged prosecutorial misconduct during the prosecution's summation, Todd states that the "prosecutor committed misconduct when he improperly vouched for the credibility of a witness and suggested that the witness faced retribution due to her testimony." (Pet. at 6.)  Todd is referring to the following comments made by the Assistant District Attorney regarding the testimony of eyewitness Taniah Morrow: "Taniah Morrow showed courage.  She showed courage to come in here, stand up, be strong, face him knowing him, knowing his friends, knowing what she had to go back to in the Central Islip community."  (Tr. 1903.)  Todd raised this argument on direct appeal and the Second Department determined that not only were these comments appropriate for summation, but they were "unpreserved for appellate review inasmuch as he did not object to the comments he now claims were improper."  Todd, 108 A.D.3d at 685.

The Second Department "expressly relied on a procedural default as an independent and adequate state ground" when rejecting this argument.  Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (quoting Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996)).  Thus, this prosecutorial

misconduct claim is procedurally barred from habeas corpus review.  Todd has failed to allege any cause, prejudice, or a fundamental miscarriage of justice resulting if he is barred from habeas review; therefore, Todd is unable to overcome this procedural bar.  See Coleman, 501 U.S. at 750. Furthermore, as discussed below, even if this claim was not procedurally barred, it fails on the merits.

As to the contested comment made during the prosecution's cross-examination, Todd states that the "prosecutor committed misconduct . . . when he asked defendant if he was aware that his brother had turned him into the police."  (Pet. at 6.)  This argument was raised on direct appeal and the Second Department concluded that though the comment was improper, the trial court corrected the error via its curative instruction.  Todd, 108 A.D.3d at 684-85.  The Second Department stated that the trial court "immediately intervened and subsequently delivered a strong and unequivocal curative instruction.  These ameliorative actions ensured that the prosecutor's improper question did not deprive the defendant of a fair trial."  Id.

As explained below, both of Todd's prosecutorial misconduct claims are meritless.  To succeed on a prosecutorial misconduct claim, a petitioner must meet a high standard by showing that the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal citation and quotation marks omitted).  When determining whether comments made by the prosecution amount to prosecutorial misconduct, courts focus "primarily on three factors: the severity of the misconduct, the measures adopted to cure it, and the certainty of conviction in the absence of the misconduct."  United States v, Melendez, 57 F.3d 238, 241 (2d Cir. 1995) (collecting cases).

In the context of summations, it is well settled that "[r]emarks of the prosecutor in summation do not amount to a denial of due process unless they constitute 'egregious misconduct.'" United States v. Shareef, 190 F.3d 71, 78 (2d Cir. 1999) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974)). Here, the prosecution's comments were well within what is permitted during a summation and Todd has failed to demonstrate how these statements denied him due process. Bentley v. Scully, 41 F.3d 818, 824-25 (2d Cir. 1994).

As to the question during the cross-examination of Todd, the Court determines that though this question may have been improper, the trial court took measures to prevent Todd from answering the question and provided a lengthy curative instruction to the jury. (Tr. 1804-06.) The Court finds, as the Second Department did, that with the curative instruction the trial court prevented any denial of due process. Greer v. Miller, 483 U.S. 756, 766 n.8 (1987) (stating that the court will "presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it")).

In sum, the Court finds that the Second Department's decision rejecting Todd's prosecutorial misconduct claims was not contrary to, or an unreasonable application of clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts. See 28 § U.S.C. 2254(d)(1).

## 2. Weight of the Evidence Claim

Next, Todd contends that the prosecution failed to meet its burden of proof beyond a reasonable doubt at trial, and as such, his conviction is against the weight of the evidence. On direct appeal, the Second Department dismissed this claim on the merits, stating that "[t]he evidence was legally sufficient to disprove the defendant's justification defense … we are satisfied that the jury's rejection of that defense was not against the weight of the evidence." Todd, 108

A.D.3d at 684 (internal citations omitted).  Thus, the Court proceeds to evaluate the merits of the claim and finds that it does not provide a basis for habeas relief.

When seeking habeas corpus relief based on the legal sufficiency of the evidence, the petitioner "bears a very heavy burden." Einaugler v. Supreme Court of the State of N.Y., 109 F.3d 836, 840 (2d Cir. 1997) (quoting Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993)).  A criminal conviction will not be disturbed if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also Policano v. Herbert, 507 F.3d 111, 115-16 (2d Cir. 2007) (stating that "[i]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no trier of fact could have found proof of guilt beyond a reasonable doubt") (quoting Jackson, 443 U.S. at 324). As long as "a reasonable mind might fairly conclude guilt beyond a reasonable doubt," the Court will not reverse a state court conviction. United States v. Strauss, 999 F.2d 602, 696 (2d Cir. 1993) (quoting United States v. Mariani, 725 F.3d 862, 865 (2d Cir. 1984)).  When considering such a claim, the facts are viewed in the light most favorable to the verdict. See Garbutt v. Conway, 668 F.3d 79, 80 (2d Cir. 2012) (per curiam).

"In considering a petition for writ of habeas corpus based on insufficient evidence to support a criminal conviction in the state courts, a federal court must look to state law to determine the elements of the crime." Green v. Abrams, 984 F.2d 41, 44 (2d Cir. 1993).

Having considered each of the crimes of which Todd was convicted, the Court concludes that the Second Department's upholding of the convictions is neither contrary to nor an

unreasonable application of clearly established federal law and its decision was not based on an unreasonable determination of the facts.

As discussed above, Todd was convicted of one count of Manslaughter in the First Degree and three counts of Assault in the First Degree. According to the New York State Penal Law, "[a] person is guilty of manslaughter in the first degree when, with intent to cause serious physical injury to another person, he causes the death of such person or of a third person." N.Y. Penal Law § 125.20(1). Additionally, under New York state law, "[a] person is guilty of assault in the first degree when, with intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument." N.Y. Penal Law § 120.10(1). Serious physical injury means "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." N.Y. Penal Law § 10.00(1).

In his petition, Todd does not direct the Court to what was insufficient about the evidence presented to the jury during trial. (See Pet.) When the Court looks to the trial record in its entirety, the Court finds there was substantial evidence to support the jury's determination of Todd's guilt. Over the course of the trial the prosecution presented evidence via testimony from multiple eyewitnesses to the incident, including the two surviving victims Luis Perez and Richard Owens. (Tr. 729-861, 1250-86.) Further, the jury heard testimony from expert witnesses and police officers involved in the investigation of what transpired on Central Islip Day. (Tr. 589-681, 862-1246, 1473-1608.) During the trial, Todd testified on his own behalf, during which he admitted to shooting a loaded firearm multiple times causing serious injuries to Luis Perez and Richard Owens, and the death of Robert Adams, but argued that he was justified in doing so. (Tr. 1640-1835.)

17

Following deliberations, the jury returned a guilty verdict, thus finding the government's evidence sufficient to combat Todd's justification defense. (Tr. 2076-77.)

In sum, the Court determines that Todd has not met the high burden of demonstrating that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Flowers v. Fisher, 296 F. App'x 208, 210 (2d Cir. 2008) (quoting Jackson, 433 U.S. at 324) (internal quotation marks omitted). Thus, this claim is without merit.

### 3. Confrontation Clause Claim

Todd argues that a question during the prosecution's cross-examination violated the Confrontation Clause, and as such he is entitled to habeas relief. The comment Todd takes issue with is the following:

> Q: Now, Michael Hagood?
> A: Yes.
> Q: He's your foster brother?
> A: Yes. We grew up in foster home together.
> …
> Q: Do you know it was Michael Hagood who turned you into the police?

(Tr. 1776.) Following this, defense counsel objected and the Court did not permit any response to the question. (Tr. 1776.) Michael Hagood did not testify at Todd's trial, and as such, he was not cross-examined. Therefore, Todd claims the prosecution violated the Confrontation Clause.

Todd failed to raise this record-based claim on direct appeal. Instead, he raised this Confrontation Clause claim in his Section 440.10 motion, stating "(In this case) defendant's sixth amendment right to confront witness (Michael Hagood) was violated where the court says the judgment of conviction due to several instances of prosecutor misconduct." (Section 440.10 Motion at 88.) As support, Todd cited to cases that exclusively addressed prosecutorial misconduct; none related to the Confrontation Clause. (See id.) The Supreme Court of Suffolk

18

County denied the Section 440.10 Motion in its entirety, but made no specific reference to the Confrontation Clause portion of Todd's argument. The court did, however, state that "[w]ith respect to all of the arguments raised by defendant . . . there are no circumstances under CPL § 440.10 requiring a vacation of judgment. (Court Order Denying Def.'s 440.10 Mot. at 2.)

Todd's Confrontation Clause claim appears to be procedurally barred. Todd was required to raise this claim on direct appeal and, without any justification, failed to do so. See N.Y. CPL § 440.10(2)(c) ("the court must deny a motion to vacate a judgment when . . . . sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's . . . unjustifiable failure to raise such ground . . .") Because Todd has already filed a direct appeal and can longer raise this claim to the appropriate state court, it appears that this Confrontation Clause claim is procedurally barred. Additionally, Todd has not provided any justification for failing to bring his Confrontation Clause claim on direct appeal; therefore, he is unable to overcome this procedural bar.

In any event, Todd's Confrontation Clause claim is without merit. The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. Accordingly, the Confrontation Clause bans the admission of testimonial statements "unless the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant regarding the statement." United States v. Feliz, 467 F.3d 227, 231 (2d Cir. 2006) (citing Crawford v. Washington, 541 U.S. 36, 68 (2004)). In Crawford, the Supreme Court clarified that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford, 541 U.S. at 59, n.9 (internal citation

19

omitted).   Testimonial statements "all involve a declarant's knowing responses to structured questioning in an investigative environment or a courtroom setting where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings."  United States v. Saget, 377 F.3d 223, 228 (2d Cir. 2004).   The focus in Confrontation Clause cases is that the "evidence be subjected to a test of its veracity through the rigors of cross examination." Morales v. Herbert, 01-CV-7529, 2002 WL 31780192, at *4 (S.D.N.Y. Dec. 12, 2002).

If the Court determines that the admission of a statement is a violation of the Confrontation Clause, the Court must next turn to whether such admission amounts to "harmless error."  McBee v. Burge, 644 F. Supp. 2d 270, 283 (E.D.N.Y. July 24, 2009); Brecht v. Abrahamson, 507 U.S. 619 (1993).   When considering whether a violation of the Confrontation Clause amounts to harmless error courts consider several factors, including: "(1) the strength of the Government's case; (2) the degree to which the statement was material to a critical issue; (3) the extent to which the statement was cumulative; and (4) the degree to which the Government emphasized the admissible evidence in its presentation of its case."  McBee, 644 F. Supp. 2d at 284 (internal quotation marks and citations omitted).  However, "[t]he strength of the prosecution's case is probably the single most critical factor in determining whether error was harmless."  United States v. Castano, 999 F.2d 615, 618 (2d Cir. 1993).

Here, the contested cross-examination question, though potentially improper, did not rise to a violation of the Confrontation Clause as the trial court prevented any testimonial statement from being introduced into evidence.  The trial court did not permit Todd to answer the question and proceeded to provide a curative instruction.  (Tr. 1804-06.)  As the question was stricken from the record, no response was given, and the jury was instructed to not consider it, no violation of the Confrontation Clause occurred.

Further, even assuming, for the sake of argument, that this question violated the Confrontation Clause, it amounted to harmless error by the trial court. As discussed above, the prosecution presented substantial evidence against Todd—including eyewitness testimony, police officer and expert witness testimony, as well as inculpatory statements made by Todd regarding his conduct. As defense counsel stated in his opening statement, "this is a case of justification." (Tr. 584.) The critical issue for the jury to determine was whether Todd was justified in shooting the firearm on Central Islip Day—the question of who turned Todd in to the police was irrelevant to that issue. In sum, Todd's Confrontation Clause argument fails on the merits.

**4. Ineffective Assistance of Counsel Claim**

Todd argues that he was deprived of effective assistance of trial counsel based on two grounds—both are without merit.

First, Todd's argument that his trial counsel erred by failing to object to comments made during the prosecution's cross-examination of him is utterly meritless. As was discussed at length above, Todd's trial counsel did, in fact, object and as a result of counsel's efforts the trial court gave a substantial curative instruction. (Tr. 1804-06.)

Second, Todd asserts that his trial counsel was ineffective for failing to object during the prosecution's summation.[3]

---

[3] In addition to arguing that his counsel was ineffective for failing to object, Todd's petition also appears to argue that his counsel was ineffective for failing to preserve arguments for direct appeal. (Pet. at 10.) In the context of Todd's ineffective assistance claim concerning the prosecutor's comments during summation, a failure to object and a failure to preserve an argument are one and the same. The Court, however, notes that this portion of Todd's handwritten petition is somewhat difficult to decipher and respondent construes Todd's argument in a different fashion. Respondent construes this portion of the petition to state that counsel failed to "pursue" (rather than "preserve") arguments on appeal. Even assuming, for the sake of argument, that Todd is asserting that his appellate counsel failed to "pursue" certain arguments on appeal, such a claim is clearly meritless. Todd has not identified any potentially meritorious issues that appellate counsel failed to pursue on appeal, and this Court finds none. Although appellate counsel did not raise a Confrontation Clause argument, as explained above, such an argument is meritless.

Respondent argues that this claim is procedurally barred and also fails on the merits. It is ultimately unnecessary to resolve the procedural bar question because Todd's claim is clearly meritless.[4]

To prevail on an ineffective assistance of counsel claim, the petitioner must establish that the defense counsel's performance was so inadequate that his Sixth Amendment right to counsel was violated. See Strickland v. Washington, 466 U.S. 668, 696 (1984). Therefore, Todd must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 688). First, it must be demonstrated that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Wilson v. Mazzuca, 570 F.3d 490, 502 (2d Cir. 2009) (quoting Strickland, 466 U.S. at 687). Next, a petitioner must show that he was prejudiced by said

---

[4] Respondent's assertion that this claim is procedurally barred implicates three issues. First, Todd first raised this ineffective assistance of counsel claim in his Section 440.10 motion. (Def.'s 440.10 Mot. at 87.) On direct appeal, Todd took issue with the comment made by the prosecution in summation but raised it only in the context of a prosecutorial misconduct claim. (See App. Div. Br. at 24-28.) In denying the 440.10 motion, the Supreme Court of Suffolk County ruled that the ineffective assistance of counsel claim regarding the summation was procedurally barred as the Second Department had already ruled on this issue. (Court Order Denying Def.'s 440.10 Mot. at 2.) Although this ineffective assistance claim and the prosecutorial misconduct claim were related, these are not identical claims. That said, the Second Department's conclusion that the prosecutor's comments in summation "were either fair response to defense counsel's summation, fair comment on the evidence, or permissible rhetoric" would appear to be dispositive of any ineffective assistance claim based on a failure to object to the prosecutor's comments. Second, even putting aside the question of whether the Supreme Court of Suffolk County was correct on the question of whether these claims raised identical issues, Todd's ineffective assistance claim may also be procedurally barred for a separate reason. Todd's claim regarding trial counsel's failure to object during the prosecutor's summation is wholly based on the trial record. Accordingly, it appears that Todd was required to raise this issue on direct appeal and could not pursue it in a 440.10 motion. See Sweet v. Bennett, 353 F.3d 135, 140 (2d Cir. 2003) (holding that an unexhausted ineffective assistance claim was procedurally barred because "the basis for… [the] claim was particularly well-established in the trial record). Third, even if it was permissible for Todd to raise this ineffective claim in a 440.10 motion, it appears that Todd did not exhaust this claim through his 440.10 Motions because he failed to appeal the denial of the 440.10 Motions.

In light of all of the above, Todd may be procedurally barred from pursuing his ineffective assistance claim or this claim may be unexhausted. However, because Todd's ineffective assistance claim is meritless it is unnecessary to resolve the procedural bar or exhaustion issues.

deficient performance, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Rosario v. Ercole, 601 F.3d 118, 123 (2d Cir. 2010) (internal citation and quotation marks omitted). Here, Todd has not satisfied either of the prongs of the Strickland test; thus he has not established that trial counsel was ineffective.

Before discussing the alleged errors by trial counsel, the Court will briefly discuss the defense presented by counsel at trial. The prosecution had numerous eyewitnesses to the incident; video surveillance that captured what led up to the incident; expert witnesses and police witnesses to discuss the investigation; as well as an oral and written confession from Todd. In the face of the evidence, Todd's lawyer vigorously defended him. Todd's counsel presented a justification defense, with Todd himself taking the stand, stating to the jury that he shot the loaded firearm as he was in fear for his safety. (Tr. 1659-61.) Through cross-examination, defense counsel made attempts to attack the credibility of all the eyewitnesses and attempted to call into question the validity of the inculpatory statements made by Todd to Detectives. (Tr. 1021-60.) Additionally, defense counsel successfully moved to exclude prison phone calls made by Todd that the prosecution tried to move into evidence. (Hr'g. 24-44.) Based on these efforts, the jury acquitted Todd of Murder in the Second Degree and Attempted Murder in the Second Degree. (Tr. 2076-77.)

However, despite trial counsel's efforts, the evidence against Todd at trial was overwhelming. Defense counsel's failure to object to the prosecution discussing the retribution an eyewitness may face for testifying does not amount to an error that resulted in a deprivation of a fair trial. See Strickland, 466 U.S. at 687. Todd cannot show that he was prejudiced by counsel's

failure to object to these comments.  This Court agrees with the Second Department's conclusion that the comments at issue did not rise to the level of prosecutorial misconduct.  Even if Todd's counsel had objected, Todd would have received, at most, a curative instruction and Todd cannot show that there is a reasonable probability that, with such an instruction, the outcome of the trial would have been different.  Moreover, given that Todd would have only have received, at best, a curative instruction, it was reasonable, as matter of strategy, for Todd's counsel not to object to the prosecutor's comments, which may have only been highlighted by a curative instruction. Accordingly, Todd's ineffective assistance of counsel claim is denied.

### III. CONCLUSION

The Court has considered all of Todd's claims and found them either procedurally barred or meritless.  Accordingly, Todd's petition is DENIED.  A certificate of appealability shall not issue because Todd has not made a substantial showing that he was denied a constitutional right. See 28 U.S.C. § 2253(c)(2).  I certify that any appeal of this Order would not be taken in good faith, and thus in forma pauperis status is denied for the purposes of any appeal.  Coppedge v. United States, 369 U.S. 438, 444–45 (1962).  The Clerk of the Court is respectfully directed to serve notice of entry of this Order on all parties and to close the case.

**SO ORDERED.**

Dated:  January  17, 2018
Central Islip, New York

_____
/s/ (JMA)
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE